

# BUSH & TAYLOR, P.C.

### ATTORNEYS AT LAW

office 757.935.5544
fax 757.935.5533
www.bushtaylor.com

September 9, 2020

**Via Hand Delivery**
Gail P. Clayton, Clerk
Surry County Circuit Court
28 Colonial Trail, East
Surry, Virginia 23883

    Re: **Straight Line Drive, Inc. v. Lee Vanatta and Jitan Kuverji**
       **Complaint**
       **Surry County Circuit Court**

Dear Ms. Clayton,

  Please find enclosed an original Cover Sheet for Filing Civil Actions and Complaint with exhibits, which I ask to be filed. A check in the amount of $342.00 is enclosed for the filing fee in this case.

  As the Defendants are located out of state, I will be engaging a private process server to serve them. I have enclosed two additional copies of the pleadings to be prepared for service of process. Once they are ready, please contact my office so that I may arrange for pick-up and service by our private process server.

  I appreciate your prompt attention to this matter. Should you have any questions, please free to contact me at 757-935-5544.

      Very truly yours,

      Fred D. Taylor

FDT/dgb

Cc: Straight Line Drive, Inc.

Enclosures



EXHIBIT
**A**

---

**SUFFOLK**
200 North Main Street
Suffolk, VA 23434

**VIRGINIA BEACH**
4445 Corporation Lane, Suite 205
Virginia Beach, Virginia 23462

**EASTERN SHORE**
109 Mason Avenue
Cape Charles, VA 23310
*Location ONLY. No mail received here.*

# COVER SHEET FOR FILING CIVIL ACTIONS
COMMONWEALTH OF VIRGINIA

Case No. ...............................................

(CLERK'S OFFICE USE ONLY)

.............................................. Sussex County .............................................. Circuit Court

.......... Straight Line Drive, Inc. .......... v./In re: .......... Lee Vanatta and Jitan Kuverji ..........

PLAINTIFF(S)                                                         DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [x] attorney for [x] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL
**Subsequent Actions**
- [ ] Claim Impleading Third Party Defendant
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [ ] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [ ] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [ ] Product Liability
- [ ] Wrongful Death
- [x] Other General Tort Liability

## ADMINISTRATIVE LAW
- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [ ] DMV License Suspension
  - [ ] Employee Grievance Decision
  - [ ] Employment Commission
  - [ ] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [ ] Other Administrative Appeal

## DOMESTIC/FAMILY
- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
- [ ] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

## WRITS
- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS
- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare/Create
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

## MISCELLANEOUS
- [ ] Amend Death Certificate
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Approval of Transfer of Structured Settlement
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of Property or Money
- [ ] Freedom of Information
- [ ] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one)
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [ ] Other (please specify)

[x] Damages in the amount of $ 846,271.00    are claimed.

09/09/2020
DATE

[ ] PLAINTIFF  [ ] DEFENDANT  [x] ATTORNEY FOR [x] PLAINTIFF [ ] DEFENDANT

Fred D. Taylor, Esq.
PRINT NAME

Bush & Taylor, PC, 200 N. Main St., Suffolk, VA 23434
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

PH-757-935-5544; FAX-935-5533

fred@bushtaylor.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

FORM CC-1416 (MASTER) PAGE ONE 07/16

> *"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

**VIRGINIA:   IN THE CIRCUIT COURT OF SURRY COUNTY**

STRAIGHT LINE DRIVE, INC.,                          )
a Virginia corporation,                             )
                                                    )
                    Plaintiff,                      )
                                                    )
v.                                                  )    Case No.:  CL20_____
                                                    )
LEE VANATTA AND                                     )
JITAN KUVERJI,                                      )
                                                    )
                    Defendants.                     )

## COMPLAINT

COMES NOW the plaintiff Straight Line Drive, Inc. ("SLD") and for its complaint

against defendants Lee Vanatta ("Vanatta") and Jitan Kuverji ("Kuverji") (collectively

"Defendants"), states as follows:

### NATURE OF THE ACTION

1.      This is an action by SLD against Defendants seeking money damages to

remedy the unlawful acts of Defendants, including breach of fiduciary duty, aiding and

abetting breach of fiduciary duty, fraud, common law conspiracy, violation of Virginia's

Business Conspiracy statute, and unjust enrichment. SLD also seeks the recovery of its

attorneys' fees and costs.

### PARTIES

2.      Plaintiff SLD is a corporation duly incorporated pursuant to the laws of the

Commonwealth of Virginia and with a principal place of business in Claremont, Surry

County, VA, 23899.

1

3.      Vanatta is a natural person who is a resident of the State of Georgia, residing in Savannah, GA. Vanatta is therefore a Georgia citizen and is not a citizen of any other state. Vanatta was at all times relevant to the claims herein a director and the former Chief Operating Officer of SLD. Vanatta is currently a shareholder of SLD.

4.      Kuverji is a natural person who is a resident of the State of Florida, residing in Jacksonville, FL. Kuverji is therefore a Florida citizen and is not a citizen of any other state. Kuverji is a purported shareholder of SLD.

## JURISDICTION AND VENUE

5.      Vanatta is subject to the Court's jurisdiction pursuant to Va. Code § 8.01-328.1 because this action arises from Vanatta's transaction of business in Virginia and Vanatta caused a tortious injury in this Commonwealth by an act or omission outside this Commonwealth and he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

6.      Kuverji is subject to the Court's jurisdiction pursuant to Va. Code § 8.01-328.1 because this action arises from Kuverji's transaction of business in Virginia.

7.      Venue is proper in this Court pursuant to Va. Code § 8.01-262 because, among other things, Vanatta and Kuverji regularly conduct substantial business activity in this forum, the cause of action arose in this forum, and plaintiff resides in this forum and all defendants are nonresidents of the Commonwealth of Virginia.

2

## GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

### A.   The Creation of SLD

8.      SLD is a technology company that was formed to bring new innovations and revolutionary technologies to the can-making machinery industry. SLD provides value to the industry by engineering common core systems that can be used across all bodymakers, regardless of manufacturer.

9.      Don Haulsee ("Haulsee"), the current CEO and a director of SLD, is the inventor of over 10 patents in the can-making industry. Haulsee assigned two of these patent applications, 62/342,844 and 15/607,347, to SLD as his initial equity. Those applications have since matured into a granted patent, US 10,687,518 B2. Additionally, from January 2017 through September 2017, Haulsee personally invested approximately $150,000.00 into SLD.

10.      Vanatta agreed to place $100,000.00 of his personal funds into SLD as his initial equity. At the beginning of 2017, Vanatta at all times told Haulsee that his initial equity was from his personal funds.

11.      At some point in late 2017, Vanatta told Haulsee that he took out a personal loan for his $100,000.00 initial equity into SLD.

12.      On or about October 19, 2016, Vanatta initially communicated to Haulsee that he had spoken to investors that know and trust him about SLD. Further, Vanatta told Haulsee that he could create a business plan that had an investor exit strategy. Ultimately, Vanatta told Haulsee that he would need a non-disclosure agreement so that they could further discuss Haulsee's vision of the company and how Vanatta could assist.

3

13.     On or about December 15, 2016, Vanatta communicated with Haulsee the steps to complete the corporate formation of SLD, including, (1) forming the corporate entity, (2) drafting a Memorandum of Understanding between SLD and Eagle Bluff Design for the transfer of technology to SLD, (3) acquiring short term funds for SLD, and (4) finalizing long term funding to SLD by April 1, 2017.

14.     On January 6, 2017, Vanatta filed Articles of Incorporation for SLD with the Virginia Secretary of State (*See* Articles of Incorporation, attached as ex. A).

15.     The Articles of Incorporation listed Vanatta and Haulsee as the initial directors of SLD.

16.     On January 6, 2017, the Commonwealth of Virginia issued the certificate of incorporation for SLD.

17.     On January 20, 2017, SLD entered into a Corporate Resolution (the "January 20, 2017 Corporate Resolution") awarding 100 shares of SLD stock as follows:

| Shareholder | Number of Shares |
| --- | --- |
| Megan Gomez | 10 |
| Brenna Haulsee | 10 |
| Sam Morrison | 10 |
| Chris Haulsee | 10 |
| Kevin Haulsee | 10 |
| Sean Vanatta | 20 (4 withheld for birth of 2 children) |
| Elliot Vanatta (in trust) | 2 |
| Alison Lamb | 18 |
| Penelope Lamb (in trust) | 2 |
| Justin Lamb Jr. (in trust) | 2 |
| Megan Rice (in trust) | 2 |
| Amanda Rice (in trust) | 2 |
| Abigail Rice (in trust) | 2 |

18.     On or about February 11, 2017, Vanatta communicated with Haulsee the appointment of the initial officers of SLD: Haulsee as President/CEO/Founder/Director and Vanatta as COO/Director.

19.     Haulsee's duties included overseeing engineering design, working with patent attorneys, developing industry relationships, managing installations of equipment,

4

overseeing research and development, hiring new engineers, and managing technical aspects of any patent litigation.

20.    Vanatta's duties included day to day corporate operations including budgeting, bill paying, and cash flow analysis, setting corporate national and global marketing strategy with Haulsee, negotiating and administering contracts with clients and vendors, ensuring proper financial reporting from the company's CPA to investment groups, managing all investor relations, balancing orders, installations, and cash flow, maintaining corporate books including the board of director minute book to Virginia Law standards, and managing any business aspects of patent litigation.

21.    At all times relevant from January 2017 through October 2018, Vanatta was the only person from SLD with access to the SLD bank accounts and with access to the SLD financials.

22.    On June 30, 2017, Vanatta purportedly drafted a Capitalization Report that

| Shareholder | Number of Shares | SS# |
|---|---|---|
| Don Haulsee | 660 | |
| Lee Vanatta | 150 | |
| | | |
| Haulsee Children | 50 Shares | |
| | | |
| Vanatta Children | 50 Shares | |
| | | |
| Randy Norwood | 2 Shares | |
| | | |
| | | |
| Treasury | 88 Shares | |

shows SLD's shares distributed as follows:

23.    There is no known Corporate Resolution in relation to the June 30, 2017 re-distribution of shares.

5

24.     As of June 30, 2017, Kuverji was not a shareholder of record for SLD.

25.     A purported memo titled Revised Capitalization Table is dated July 3, 2017

shows the SLD shares distributed as follows:

| Shareholder | Number of Shares | SS# |
|---|---|---|
| Don Haulsee | 692 | |
| Lee Vanatta | 200 | |
| Megan Gomez | 10 Shares | |
| Brenna Haulsee | 10 Shares | |
| Sarah Morrison | 10 Shares | |
| Christopher Haulsee | 10 Shares | |
| Kevin Haulsee | 10 Shares | |
| Laura Leatherwood | 1 Share | |
| Sean Vanatta | 22Shares | |
| Alison Lamb | 22 shares | |
| Megan Rice | 2 Shares | |
| Amanda Rice | 2 Shares | |
| Abigail Rice | 2 Shares | |
| Jeff Smith | 2 Shares | |
| Randy Norwood | 2 Shares | |
| Mike Vanatta | 1 Share | |
| Steve Wigmore | 2 Shares | |
| Jitan Kuverji | 15 Shares | |
| Total | 1015 Shares | |

26.     The total amount of distributed shares in the July 3, 2017 Revised

Capitalization Table is 1,015, which is 15 shares over the number of authorized shares SLD

stated in its Articles of Incorporation (*See* ex. A).

27.     The 2018 Reinstatement filed with the Secretary of State on November 9,

2018 shows that SLD only had 1,000 shares of authorized shares (*See* 2018 Reinstatement,

attached as Ex. B).

**B.     The Unauthorized, Fraudulent Transaction Between Vanatta and Kuverji**

28.     On June 28, 2017, two days before the June 30, 2017 Vanatta memo above,

Kuverji purportedly entered into a promissory note (the "Kuverji Note," attached as Ex. C)

with SLD for "15 shares of SLD total shares outstanding 1000," in exchange for

$100,000.00 with 10% interest.

6

29.     The Kuverji Note was to come due on January 26, 2018, seven months after its purported execution.

30.     Vanatta had the Kuverji Note in his sole possession and did not disclose the existence of the deal, the note, or the funds received in relation to the Kuverji Note to any officers, directors, or shareholders of SLD.

31.     Other than Vanatta and Kuverji, SLD was not aware of any negotiations regarding the Kuverji Note.

32.     SLD was not aware of any terms regarding the Kuverji Note.

33.     SLD was not aware of the execution of the Kuverji Note.

34.     On June 28, 2017, Kuverji wired $50,000 into Vanatta's personal Bank of America checking account.

35.     On July 3, 2017, Kuverji wired a second $50,000 into Vanatta's personal Bank of America checking account.

36.     On July 6, 2017, Vanatta deposited $40,000 into the SLD bank account as his initial equity and the company's startup capital.

37.     Vanatta kept the additional $60,000.00 from Kuverji for his personal use.

38.     No payments were made on the Kuverji Note prior to January 26, 2018, the purported due date on the Kuverji Note.

39.     SLD has no record showing that Kuverji attempted to seek repayment of the Kuverji Note at any time.

40.     Upon information and belief, Vanatta told Kuverji that he could not repay the Kuverji Note in January of 2018. Vanatta informed Kuverji, a shareholder at that time of SLD, the details of the potential deal with Evergreen Capital, LLC ("Evergreen

7

Capital"), and that once SLD received funds from Evergreen Capital, the Kuverji Note would be repaid.

41.     Vanatta and Kuverji both knew and understood that the Kuverji note was "secret," had not been disclosed to other officers or directors of SLD, and would not be disclosed to other officers or directors of SLD because otherwise Evergreen Capital would not invest and/or Evergreen Capital would expressly restrict SLD's ability to pay Kuverji.

### C.     Evergreen Capital, LLC's Investment In SLD

42.     In early 2018, SLD began speaking to Evergreen Capital about investing in the company.

43.     Evergreen Capital performed standard due diligence on SLD before investing any funds into the corporation. Lee Vanatta was the corporate officer, as COO, who assisted in the due diligence with Evergreen Capital.

44.     On March 9, 2018, Vanatta sent Brad Smith, the principal of Evergreen Capital a Memo stating that the financials for 2017 were still in process due to the 2017 tax returns.

45.     In that memo, Vanatta also stated, (1) there were no convertible debentures on SLD's books, (2) there was approximately $300,000.00 in long term debt on the books (interest free long-term loans from principals (Haulsee/Vanatta) for startup costs, patent work, first machine costs, and demonstration machine costs), and (3) there was no other debt on the books.

46.     Ultimately, SLD and Evergreen Capital entered a Convertible Promissory Note on March 14, 2018 (the "Evergreen Note," attached as Ex. D). The terms of the

8

Evergreen Note stated in exchange for $250,000.00 at 12% interest Evergreen Capital would receive 10 shares of SLD stock.

47.     Section V, Representations and Warranties, contained a clause that all information disclosed in Exhibit C to the Evergreen Note was true, correct, complete, and accurate. The March 9, 2018 Memo, which stated there was no outside debt on the books, was part of Exhibit C.

48.     Under Section I, Terms of Note, Vanatta stated that SLD had authorized 1,100 shares (*See* Ex. D at 2).

49.     From the initial Articles of Incorporation filed with the Secretary of State (*See* Ex. A) through the time of this filing, SLD has at all times only had 1,000 authorized shares (*See* Ex. B, 2019 Annual Report, attached as Ex. E, 2020 Annual Report, attached as Ex. F, and Amended 2020 Annual Report, attached as Ex. G).

50.     Under Section VIII, Security, Vanatta stated that SLD would offer each patent and patent application filed by or on behalf of SLD, specifically listing the 62/342,844 and 15/607,347 patent applications, as security for its obligations under the Evergreen Note (*See* Ex. D at 4-5, 8).

51.     On March 14, 2018, at 11:56 A.M. EST, Evergreen Capital wired $250,000.00 into SLD's bank account.

**D.   The Theft and Misappropriation of SLD Funds by Vanatta and Kuverji**

52.     That same day, March 14, 2018, at 2:53 P.M. EST, Vanatta wired $110,000.00 from SLD's account to Kuverji.

53.     This transfer was not authorized by SLD. In fact, Vanatta never disclosed this payment to anyone at SLD.

54.     Pursuant to Vanatta's own accounting, there was no debt or other liability on SLD's books to Kuverji, or anyone, that would require a payment of $110,000.00 at the time of the execution of the Evergreen Note.

55.     On October 8, 2018, Vanatta finally sent Evergreen Capital finished 2017 financials, including a Balance Sheet and P&L. Vanatta told Brad Smith of Evergreen Capital that "there was a $105,000.00 note at year end which we paid off in January" (*See* 2017 Balance Sheet, attached as Ex. H). The only note on the balance sheet is for $100,000.00 with interest owed in the amount of $4,167.00 at the time the document was created, December 31, 2017.

56.     Upon information and belief, this was Vanatta and Kuverji's intentionally false and misleading description of the repayment of the Kuverji Note.

57.     On March 21, 2018, Vanatta took his family on a vacation to Jekyll Island, Georgia.

58.     On March 22, 2018, Vanatta made the following charges on the SLD business card: $389.53 at Jekyll Island Club, $80.00 at Three Oaks Farm, $389.53 at Jekyll Island Club, and $3,189.00 at Shop Factory Direct.

59.     On March 23, 2018, Vanatta made the following charge on the SLD business card: $829.24 at Enterprise Rent-A-Car.

60.     On March 26, 2018, Vanatta made the following charges on the SLD business card: $65.00 at Jekyll Island Club, $323.92 at Jekyll Ocean Club, and $44.27 at Jekyll Island Club.

61.     On March 26, 2018, Vanatta made the following charge on the SLD business card: $47.52 at Chevron in Savannah, Georgia.

10

62.     Upon information and belief, all the listed charges in paragraphs 56-59 were for the Vanattas' personal vacation.

63.     None of these charges were authorized SLD business expenditures.

64.     In June 2018, Vanatta took his family on a vacation to Williamsburg, Virginia.

65.     On June 4, 2018, Vanatta made the following charge on the SLD business card: $261.76 at Woodlands.

66.     On June 5, 2018, Vanatta made the following charges on the SLD business card: $31.98 at Taco Bell and $192.56 at Huzzah.

67.     On June 6, 2018, Vanatta made the following charges on the SLD business card: $23.12 at Burger King, $161.89 at Busch Gardens, $109.74 at Huzzah, and $26.15 at Huzzah.

68.     On June 7, 2018, Vanatta made the following charges on the SLD card: $101.98 at Visitor Center and $49.19 at Bakery.

69.     On June 11, 2018, Vanatta made the following charges on the SLD card: $848.05, $848.05, and $848.05 at Woodlands.

70.     On June 12, 2018, Vanatta made the following charge on the SLD card: $1,243.11 at Enterprise Rent-A-Car.

71.     Upon information and belief, all of the charges in paragraphs 63-68 were for the Vanattas' personal vacation.

72.     None of these charges were authorized SLD business expenditures.

73.     Additionally, in June of 2018, Vanatta wrote a $1,100.00 SLD check to The Landing Club, a country club in Vanatta's neighborhood.

74.     This expense was for Vanatta's personal use.

75.     At no point was this expense an authorized SLD business expenditure.

76.     After a full review of the SLD bank accounts, the following charges and checks were made by Vanatta for personal use:

| Date: | Charge: | Amount: |
|---|---|---|
| 7/18/17 | Basils Greek Restaurant | $22.66 |
| 7/19/17 | Cancun Mexican Restaurant | $66.22 |
| 9/5/17 | L. Vanatta | $900.00 |
| 9/8/17 | Kroger | $140.22 |
| 9/12/17 | L. Vanatta | $728.07 |
| 9/29/17 | Cancun Mexican Restaurant | $56.94 |
| 10/2/2017 | Four Seasons Hotel | $60.00 |
| 10/10/2017 | Cash | $300.00 |
| 11/20/17 | Four Seasons Hotel | $60.00 |
| 11/20/17 | Four Seasons Hotel | $60.00 |
| 11/21/17 | Four Seasons Hotel | $60.00 |
| 11/24/17 | Four Seasons Hotel | $60.00 |
| 12/22/17 | Aaron Swicegood | $350.00 |

77.     In total, Vanatta embezzled and converted $14,067.75 of SLD funds for his personal use.

12

### E.   Additional Unauthorized Transactions and Decisions Made by Vanatta

78.     In June and July of 2018, Vanatta solicited, negotiated, and executed a loan with William "Bill" Woulfin (the "Woulfin Note"). The Woulfin Note was for $35,000.00 and Vanatta again offered the 62/342,844 and 15/607,347 patent applications as collateral.

79.     Other than Vanatta, no officer, director, or shareholder of SLD was aware of this loan.

80.     On June 29, 2018, Vanatta contacted Michael King of Princeton Research seeking to obtain a bridge loan of $250,000.00 for a ninety-day period while SLD executed its strategy to go public. Vanatta's offer to Princeton Research was a payment of $280,000.00 after 90 days with an option to convert to equity in the purported soon-to-be public company.

81.     Vanatta also offered Michael King a $15,000.00 fee for his time in finding an investor.

82.     Vanatta again offered the 62/342,844 and 15/607,347 patent applications as collateral for above-mentioned bridge loan. This was the third time that Vanatta had pledged the patents as collateral.

83.     No officer or director other than Vanatta has any knowledge of the status of any bridge loan.

84.     Vanatta did not have authorization from SLD or its shareholders to solicit, negotiate, or execute a bridge loan, or any loan for that matter, for the purpose of making SLD into a public entity.

85.     On August 2, 2018, Kuverji entered into a second loan agreement with Vanatta for $20,000.00. It is unclear whether this loan was made for SLD or Straight Line Drive Holdings, Inc., a separate Delaware entity that Vanatta personally created.

86.     Vanatta was not authorized to solicit, negotiate, or enter into this agreement.

### F.   The Discovery of Vanatta's and Kuverji's Unlawful Acts

87.     Throughout 2018, Haulsee continually requested financials for SLD and access to SLD's bank accounts from Vanatta. Vanatta did not comply with these requests.

88.     In October 2018, Haulsee realized that SLD financials were not accurate when he received a demand letter from Woulfin for repayment on the $35,000.00 Woulfin Note that neither he nor any person at SLD, other than Vanatta, was aware of.

89.     After reviewing the demand from Bill Woulfin, Haulsee demanded all SLD financials, accounting, and bank account access from Vanatta. Haulsee then conducted an internal forensic accounting with this information and uncovered the facts as discussed herein.

90.     On October 24, 2018 Haulsee realized approximately $200,000.00 was missing from SLD accounts.

91.     On October 25, 2018, Haulsee discovered the $110,000.00 payment to Kuverji.

92.     On that same day, Haulsee identified the personal expenses that Vanatta had paid for with SLD funds.

93.     On November 20, 2018, Bill Woulfin filed suit against SLD and Vanatta for repayment of the $35,000.00.

14

94. On or about October 25, 2018, SLD became aware that Vanatta had been accepting loans without any authorization and then subsequently concealing the transactions and arrangements from the other directors and officers of SLD.

95. On or about October 25, 2018, SLD became aware that Vanatta offered SLD's patents as collateral for two loans after they had been offered as collateral for the Evergreen Note.

96. On November 8, 2018, the SLD Board of Directors unanimously consented to take corporate action, thereby removing Vanatta as Chief Operating Officer.

## COUNT I
## BREACH OF FIDUCIARY DUTY
(Against Lee Vanatta)

97. Plaintiff realleges and incorporates paragraphs 1 through 96 as if fully set forth herein.

98. Vanatta was hired as the Chief Operating Officer of SLD and was charged with the responsibility, among other things, to negotiate and administer contracts, ensure proper financial reporting, manage all investor relations, balance cashflow, maintain bank accounts, and handle direct day to day corporate operations including budgeting, bill paying, cash flow analysis.

99. Vanatta was also named as a Director of SLD.

100. As Chief Operating Officer and a Director of SLD, Vanatta owed a fiduciary duty to SLD to act in good faith and in its best interests.

101. Vanatta breached his fiduciary duties as COO and Director when, throughout 2017 and directly contrary to the interests of SLD, he materially misrepresented how much he had invested into SLD for his initial equity.

15

102.    Vanatta breached his fiduciary duties as COO and Director when, in June 2017 and directly contrary to the interests of SLD, he unilaterally negotiated and executed the Kuverji Note purporting to be on behalf of SLD with Kuverji for 15 shares of SLD stock in exchange for $100,000.00.

103.    Vanatta breached his fiduciary duties as COO and Director when, throughout 2017 and 2018 and directly contrary to the interests of SLD, he failed to disclose the transaction with Kuverji to the other officers and directors of SLD.

104.    Vanatta breached his fiduciary duties as COO and Director when, in March 2018 and directly contrary to the interests of SLD, he misrepresented to SLD and Evergreen Capital that there were no debts owed by SLD other than interest free loans from Haulsee and Vanatta for startup costs, patent work, prototype machine costs, and demonstration machine costs.

105.    Vanatta breached his fiduciary duties as COO and Director when, in March 2018 and directly contrary to the interests of SLD, he unilaterally authorized SLD to pay Kuverji the $110,000.00 on the non-sanctioned Kuverji Note from SLD's bank accounts.

106.    Vanatta breached his fiduciary duties as COO and Director when, throughout 2017 and 2018 and directly contrary to the interests of SLD, he unilaterally paid for personal expenses, including country club expenses, vacations, dinners, gifts, and other purchases that will be found through discovery, with unauthorized SLD funds.

107.    As a direct and proximate result of Vanatta's breach of his fiduciary duties as COO and Director of SLD, SLD suffered substantial economic losses, including the loss of $110,000 resulting from the unauthorized Kuverji transaction, the loss of $14,067.75

16

from Vanatta's personal spending, and other compensatory damages to be determined through discovery.

## COUNT II
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY
(Against Jitan Kuverji)

108.    Plaintiff realleges and incorporates paragraphs 1 through 107 as if fully set forth herein.

109.    A third party may be liable for another party's breach of fiduciary duty when the third party knowingly participated in the other party's breach of fiduciary duty. To be liable, the third party must affirmatively aid the breach with the requisite *mens rea*, or culpable state of mind.

110.    Kuverji participated in, and affirmatively aided, certain of Vanatta's breaches of his fiduciary duties to SLD as described above.

111.    Specifically, Kuverji aided and abetted in the breach of fiduciary duties relating to executing the unauthorized Kuverji Note with SLD for $100,000.00, sending $100,000.00 to Vanatta's personal bank account, failing to disclose the Kuverji Note for $100,000.00 to SLD, refusing to attempt collection after the January 26, 2018 default of the purported Kuverji Note, and accepting payment of the $110,000.00 from the SLD bank account.

112.    Kuverji and Vanatta worked together and communicated regularly in their efforts to execute the Kuverji Note.

113.    Specifically, Kuverji knew that no one at SLD authorized the Kuverji Note, no one at SLD signed the Kuverji Note, and that he was placing money into Vanatta's personal account, rather than into an SLD business account.

17

114.    Kuverji knew that Vanatta would use SLD funds to pay back the Kuverji

Note with ten percent (10%) interest. This is evidenced by Kuverji's refusal to attempt to

collect on the purported Kuverji Note after it went into default on January 26, 2018.

115.    Kuverji's participation in, and affirmative aid given to, Vanatta's breaches of

fiduciary duty were done knowingly. They were also done with knowledge that Vanatta

was breaching his fiduciary duties to SLD because, at the times described herein when

Vanatta was breaching his fiduciary duties to SLD, Kuverji knew that Vanatta was a senior

corporate executive of SLD, and, as a result, that Vanatta owed fiduciary duties to SLD.

116.    Kuverji participated in, and affirmatively aided, Vanatta's breaches of his

fiduciary duty to SLD with the requisite *mens rea*, or culpable state of mind. This is

evidenced by, among other things, the secretive manner of the Kuverji Note, which was

never signed by SLD, refusing to attempt collection after the January 26, 2018 default of

the purported Kuverji Note, and the funds transfer from Kuverji's personal account to

Vanatta's personal account.

117.    Accordingly, Kuverji is jointly and severally liable for Vanatta's breaches of

fiduciary duty owed to SLD and the resulting harm and damage caused.

## COUNT III
## FRAUD
(Against Lee Vanatta)

118.    Plaintiff realleges and incorporates paragraphs 1 through 117 as if fully set

forth herein.

119.    At all times during the initial funding of SLD, Vanatta made representations

and statements to Haulsee that his equity in SLD was based off a $100,000.00 personal

investment into the company.

18

120.   However, Vanatta only invested $40,000.00 into SLD.

121.   At all times during the above acts, Vanatta misrepresented that he had placed $100,000.00 into the SLD account as his investment contribution.

122.   Vanatta later admitted to taking a personal loan out for his "$100,000.00 investment."

123.   In order to replay the Kuverji Note, Vanatta misrepresented to SLD that the loan he took out was a personal loan, when it was later discovered by SLD that the Kuverji Note between SLD and Kuverji.

124.   Vanatta knowingly, intentionally, and repeatedly misrepresented the amount of his initial investment and the nature of the loan from Kuverji, intending for SLD to rely upon these misrepresentations to (1) provide inflated equity in SLD and (2) disguise his loan to Kuverji that he unilaterally executed on behalf of SLD.

125.   SLD relied upon the aforesaid misrepresentations to its own detriment by providing equity in SLD based on the understanding that Vanatta had invested $100,000.00 into SLD, initially believed to be obtained from Vanatta's personal funds and later understood to be obtained from a personal loan made to Vanatta.

126.   As a direct and proximate result of the fraudulent actions of Vanatta, SLD has suffered and continues to suffer financial damages.

19

**COUNT IV**
**COMMON LAW CONSPIRACY**
(Against Lee Vanatta and Jitan Kuverji)

127.    Plaintiff realleges and incorporates paragraphs 1 through 126 as if fully set forth herein.

128.    Defendants Vanatta and Kuverji are two or more persons who combined, associated, agreed, mutually undertook, and/or acted in concert together to accomplish the unlawful purposes described above.

129.    Vanatta and Kuverji willfully and maliciously undertook acts in mutual agreement to prepare the unauthorized Kuverji Note on SLD's behalf, including, transferring $100,000.00 from Kuverji to Vanatta's personal account under the disguise of a stock purchase, having Vanatta invest $40,000.00 as his personal investment into SLD, having Vanatta keep $60,000.00 for his personal use, refusing to attempt collection after the January 26, 2018 default of the purported Kuverji Note, and having SLD pay back the personal loan to Vanatta with ten percent (10%) interest into Kuverji's personal bank account.

130.    At all times, Vanatta and Kuverji did not disclose the above attempted transaction to SLD.

131.    Vanatta and Kuverji had a desire to injure SLD and acted in complete willful disregard to the rights of SLD.

132.    SLD has been and will continue to be damaged by Vanatta's and Kuverji's wrongful conduct.

133.    SLD is entitled to damages, including, but not limited to, compensatory damages.

**COUNT V**
**BUSINESS CONSPIRACY UNDER VIRGINIA CODE § 18.2-500**
(Against Lee Vanatta and Jitan Kuverji)

134.    Plaintiff realleges and incorporates paragraphs 1 through 133 as if fully set forth herein.

135.    By statute, Virginia law prohibits "[a]ny two or more persons… combin[ing], associat[ing], agree[ing], mutually undertak[ing] or concert[ing] together for the purpose of willfully and maliciously injuring another in his reputation, trade, business or profession by an means whatever…" Va. Code. Ann. § 18.2-499.

136.    Vanatta and Kuverji, acting in combination with one another, diverted $110,000.00 of SLD's money into the individual defendants' own pockets, thereby causing damage to SLD.

137.    Vanatta and Kuverji willfully and maliciously undertook acts in mutual agreement injuring SLD's business, specifically preparing the unauthorized Kuverji Note on SLD's behalf, transferring $100,000.00 from Kuverji to Vanatta's personal account under the disguise of a stock purchase, having Vanatta invest $40,000.00 as his personal investment into SLD, having Vanatta keep $60,000.00 for his personal use, refusing to attempt collection after the January 26, 2018 default of the purported Kuverji Note, and having SLD pay back the personal loan to Vanatta with ten percent (10%) interest into Kuverji's personal bank account.

138.    At all times, Vanatta and Kuverji did not disclose the above attempted transaction to SLD.

139.    Not only did the actions of Kuverji and Vanatta in concert with one another act to deprive Plaintiff of the $110,000.00 by virtue of the improper Kuverji Note, but

21

SLD's business and business expectancy, both present and future, were harmed, *inter alia*, by the placement in default of an otherwise valid and promising business expectancy with Evergreen Capital in the amount of $250,000.00. These damages, in conjunction with Kuverji's and Vanatta's misappropriation of SLD's funds, damages SLD's ability to conduct business and generate revenue, to the ongoing and continuing detriment of SLD's grown and grown potential, and they forced SLD to put on hold, to its further detriment, pursuit of new contracts and customers.

140.    As a result of Kuverji's and Vanatta's actions, SLD has suffered damages of at least $110,000.00 (improper payment to Kuverji) plus additional damage to SLD's business and reputation to be proven at trial.

141.    SLD is entitled to treble damages in accordance with Virginia Code § 18.2-500.

142.    SLD is entitled to reasonable attorney fees in accordance with Virginia Code § 18.2-500.

## COUNT VI
## UNJUST ENRICHMENT
(Against Jitan Kuverji)

143.    Plaintiff realleges and incorporates paragraphs 1 through 142 as if fully set forth herein.

144.    While Vanatta was Chief Operating Officer and a Director of SLD, he diverted funds from SLD to Kuverji in furtherance of the above-mentioned misappropriation, fraud, conspiracy, and conversion of $110,000.00.

145.    Kuverji knew that SLD had conferred the benefit of these funds on him. This is because Kuverji knew no one from SLD had executed the Kuverji Note; he had not

transferred any funds to an SLD account; and SLD funds were being used to repay his personal loan to Vanatta. This is best evidenced by Kuverji refusing to attempt collection after the January 26, 2018 default of the purported Kuverji Note.

146.   Kuverji has accepted and/or retained the benefit of these funds.

147.   Furthermore, Kuverji has accepted and/or retained the benefit of these funds under circumstances that would make it inequitable for Kuverji not to have to pay for them. These circumstances include the fact that Kuverji tendered a personal loan to Vanatta, the Kuverji Note was a disguise to mask the unauthorized and fraudulent transaction, and he was never actually issued any stock in SLD because his funds never went to SLD bank accounts, yet he was transferred funds of $110,000.00 from SLD funds to repay the personal loan he and Vanatta fraudulently entered into.

148.   Accordingly, Kuverji should pay SLD for the funds totaling $110,000.00 diverted to Kuverji.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff SLD requests that this Court enter judgment in its favor and against Defendants Vanatta and Kuverji, jointly and severally, on the above Counts as follows:

(1) Award SLD's actual and compensatory damages, plus past and future pecuniary damages in an amount to be ascertained though discovery and proven at trial, but at the very least of $110,000.00, as against both Vanatta and Kuverji, and $14,067.75 as against Vanatta;

(2) Order that Vanatta and Kuverji disgorge or return to SLD all financial benefits each received as a result of their unlawful conduct;

23

(3) Award SLD punitive damages against Vanatta and Kuverji in the amount of $350,000.00 each for the willful and malicious acts against SLD;

(4) Award SLD treble damages against Vanatta and Kuverji pursuant to Code of Virginia § 18.2-500 for the violations of Code of Virginia § 18.2-499;

(5) Award SLD its attorney fees and costs pursuant to Code of Virginia § 18.2-500 for the violations of Code of Virginia § 18.2-499; and

(6) Such any and all other and further relief this Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

**STRAIGHT LINE DRIVE, INC.**

By: _____
                    Counsel

Fred D. Taylor, Esquire
Virginia State Bar No. 77987
Bush & Taylor, P.C.
200 North Main Street
Suffolk, Virginia 23434
Telephone: 757-935-5544
Facsimile: 757-935-5533
E-Mail: fred@bushtaylor.com

Kelly O. Wallace (*pro hac vice* to be applied for)
Georgia Bar No. 734166
1218 Menlo Dr. NW, Suite E
Atlanta, Georgia 30318
kelly@wellbornlaw.com
Telephone:     (404) 352-3990
Facsimile:     (404) 352-3995

24

Samuel A. Mullman (*pro hac vice* to be applied for)
Georgia Bar No. 456630
1218 Menlo Dr. NW, Suite E
Atlanta, Georgia 30318
sam@wellbornlaw.com
Telephone:     (404) 352-3990
Facsimile:     (404) 352-3995

*Counsel for Plaintiff*

# EXHIBIT A

eFile

1701511071

# ARTICLES OF INCORPORATION
## OF
## STRAIGHT LINE DRIVE INCORPORATED

The undersigned, pursuant to Chapter 9 of Title 13.1 of the Code of Virginia, states as follows:

1. The name of the corporation is Straight Line Drive Incorporated.

2. The purpose for which the corporation is formed is to engage in any lawful business not required to be specifically set forth in these Articles for which a corporation may be incorporated under the Virginia Stock Corporation Act.

3. The corporation is authorized to issue 1,000 shares of common stock.

4. The name of the corporation's initial registered agent is Don R Haulsee.  The initial registered agent is an individual who is a resident of Virginia and an initial director of the corporation.

5. The address of the corporation's initial registered office, which is identical to the business office of the initial registered agent, is 135 Eagle Bluff Drive, Claremont, VA 23899.  The initial registered office is located in Surry County, Virginia.

6. The following individuals are to serve as an initial director of the corporation:

   | Name | Address |
   | --- | --- |
   | Lee L Vanatta | 121 Catalina Drive |
   | | Savannah, GA 31328 |
   | Don R Haulsee | 135 Eagle Bluff Drive |
   | | Claremont, VA 23899 |

7. The address of the corporation's principal office is 135 Eagle Bluff Drive, Claremont, VA 23899.

INCORPORATOR:

/s/     Lee L Vanatta   Date: January 6, 2017
        Lee L Vanatta

EXHIBIT A - Page 1 of 1

# EXHIBIT B



**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

**Office of the Clerk**

November 9, 2018

STRAIGHT LINE DRIVE INCORPORATED
PO BOX 400
CLAREMONT, VA 23899

**RECEIPT**

RE:     Straight Line Drive Incorporated

ID:     0813443 - 9

DCN:    18-11-07-1452

This receipt acknowledges payment of $200.00 to cover the fee for filing an application for reinstatement with this office.

The order of reinstatement was entered on November 9, 2018.

Unless a statement of change was submitted with the reinstatement application, we strongly recommend verifying the registered agent and registered office information on file in the Clerk's Office by visiting sccefile.scc.virginia.gov or contacting this office.

The next annual registration fee and annual report will be due by January 31, 2020.

If you have any questions, please call (804) 371-9733 or toll-free in Virginia, (866) 722-2551.

Sincerely,

*Joel H. Peck*

Joel H. Peck
Clerk of the Commission

RECEIPT
REIN
CISLDM

EXHIBIT B - Page 1 of 5

```
CISLDM                          CIS                      11/09/18
1    43  CISM0180          CORPORATE DATA INQUIRY        11:41:03

    CORP ID:  0813443 - 9   STATUS: 10  TERM(AUTO AR/$)  STATUS DATE: 05/31/18
  CORP NAME:  Straight Line Drive Incorporated_____

DATE OF CERTIFICATE: 01/06/2017 PERIOD OF DURATION:        INDUSTRY CODE: 00
STATE OF INCORPORATION:  VA VIRGINIA       STOCK INDICATOR:  S STOCK
MERGER IND:                      CONVERSION/DOMESTICATION IND:
GOOD STANDING IND: N TERM(AUTO AR   MONITOR INDICATOR:
CHARTER FEE: 50.00     MON NO:          MON STATUS:   MONITOR DTE:
  R/A NAME: DON R HAULSEE

    STREET:  135 EAGLE BLUFF DRIVE                  AR RTN MAIL:

        CITY:  CLAREMONT          STATE : VA  ZIP: 23899-0000
  R/A STATUS: 1  DIRECTOR      EFF. DATE: 01/06/17  LOC.: 190
ACCEPTED AR#: 000 00 0000  DATE:                   SURRY COUNTY
  CURRENT AR#: 000 00 0000  DATE:        STATUS:   ASSESSMENT INDICATOR:  0
YEAR   FEES      PENALTY   INTEREST   TAXES     BALANCE      TOTAL SHARES
 18    100.00     10.00                                            1,000
COMMAND: ...................................................................
4AÛ                                                         06,016
```

0813443 - 9

**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

AT RICHMOND, NOVEMBER  9, 2018

ORDER OF REINSTATEMENT

The corporate existence of Straight Line Drive Incorporated, a domestic corporation, was automatically terminated on May 31, 2018.  The corporation has filed an application for reinstatement and has otherwise complied with the applicable requirements of law.

Therefore, it is ORDERED that the existence of the aforementioned corporation is reinstated.

STATE CORPORATION COMMISSION

By  *Mark C. Christie*

Mark C. Christie
Commissioner

CC:      STRAIGHT LINE DRIVE INCORPORATED
         PO BOX 400
         CLAREMONT, VA 23899

REINACPT
CISLDM
18-11-07-1452

EXHIBIT B - Page 3 of 5



**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

**Office of the Clerk**

181107 1452

~~181029 1462~~

October 19, 2018

| Last Day for Reinstatement |
| May 31, 2023 |

01

DON R HAULSEE
****EMAIL****
CLAREMONT, VA 23899

RE:        Straight Line Drive Incorporated
SCC ID NO.:    0813443 - 9

**Application for Reinstatement**

Dear Customer:

To reinstate the corporation's existence, you must complete and return the following:

☐ Include a check or money order in the amount of $200.00


☐ Complete enclosed Annual Report
   o  Must be signed by a person who is listed on the report as either an officer or a director


☐ Sign below to request reinstatement of the corporation's existence:

_Donald Haulsee_    _Donald Q Haulsee_  _CEO_   _10/25/2018_
(signature of officer or director)    (printed name)    (title)    (date)

RE 100          AR18
Pd 100 (19)     LM 11-9-18
TP 200

spoke with Don gave auth to update. 12:42pm
                                      11-918hrs

REINSTAT                                              Page 1
CISRXW

P.O. Box 1197, Richmond, VA 23218-1197
Tyler Building, First Floor, 1300 East Main Street, Richmond, VA 23219-3630
Clerk's Office (804) 371-9733 or (866) 722-2551 (toll-free in Virginia) www.scc.virginia.gov/clk

EXHIBIT B - Page 4 of 5

☐ Provide a name and mailing address for reinstatement correspondence:

<u>Straight Line Drive Incorporated</u>     <u>804-731-6557</u>
(name)                                        (telephone number)

<u>PO Box 400</u>       <u>Claremont</u>     <u>VA</u>     <u>23899</u>
(mailing address)        (city/town)        (state)      (zip code)

☐ Return all documents (including this application) and a check or money order to SCC Clerk's Office, Attn: Reinstatement, PO Box 1197, Richmond, VA 23218 or use the enclosed envelope

Itemization of amount listed on page 1:

| Assessment Year | Assessment | Penalty |
|---|---|---|
| 2019 | $ 100.00 | |
| Reinstatement Fee: | $ 100.00 | |

<u>ADDITIONAL REQUIREMENTS FOR REINSTATEMENT (IF ANY)</u>

Straight Line Drive Incorporated
0813443 - 9

REINSTAT
CISRXW

Page 2

# EXHIBIT C

# *PROMISSORY NOTE*

**$100,000.00    Date: July 26th, 2017**

For value received, the undersigned Straight Line Drive Inc. (the "Borrower"), at 135 Eagle Bluff Drive, Claremont, Virginia 23899, promises to pay to the order of Jitan Kuverji (the "Lender"), at 8277 Western Way Cr., Jacksonville FL 32256 (or at such other place as the Lender may designate in writing), the sum of $100,000.00 with interest from July 26th, 2017, at 10% plus 15 shares of SLD Inc.  total shares outstanding 1000.

## I. TERMS OF REPAYMENT

### A. Payments

Unpaid principal and interest is due in full January 26, 2018.

### B. Application of Payments

All payments on this Note shall be applied first in payment of accrued interest and any remainder in payment of principal.

### C. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender.

## II. PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty. Any such prepayment shall be applied against the installments of principal due under this note in the inverse order of their maturity and shall be accompanied by payment of accrued interest on the amount prepaid to the date of prepayment.

## III. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney fees, whether or not a lawsuit is commenced as part of the collection process.

## IV. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

EXHIBIT C - Page 1 of 4

1) the failure of the Borrower to pay the principal and any accrued interest when due;

2) the liquidation, dissolution, incompetency or death of the Borrower;

3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower;

7) a misrepresentation by the Borrower to the Lender for the purpose of obtaining or extending credit; or

8) the sale of a material portion of the business or assets of the Borrower.

## V. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VI. MISCELLANEOUS

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note, or failure to accelerate the debt evidenced hereby by reason of default in the payment of a monthly installment or the acceptance of a past-due installment shall be construed as a waiver of the right of Lender to thereafter insist upon strict compliance with the terms of this Note without notice being given to Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

This note may not be amended without the written approval of the holder.

## VII. SECURITY

This note is secured with patent application "A method and system for converting rotating motion into linear motion" Cover sheet attached for reference.

## VIII. GOVERNING LAW

EXHIBIT C - Page 2 of 4

This Note shall be construed in accordance with the laws of the State of Virginia.

## IX. SIGNATURES

This Note shall be signed by Lee Vanatta, on behalf of Straight Line Drive Inc. and Jitan Kuverji.

[SIGNATURE PAGE FOLLOWS]

EXHIBIT C - Page 3 of 4

IN WITNESS WHEREOF, this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.

Signed this _28_ day of ___June___ , _2017_ , at _____ ,
_____ .

Borrower:
Straight Line Drive Inc.

By: _____
_____

Lender:
Jitan Kuverji

By: _____
Jitan Kuverji

Upon execution of the note wire funds to:

Rtg# 026009593
Account#334038411096

EXHIBIT C - Page 4 of 4

# EXHIBIT D

## CONVERTIBLE PROMISSORY NOTE

$250,000.00   Date: 7/9/2018   3/14/18 _(initials)_

For value received, Straight Line Drive Incorporated, a Virginia corporation, with a principal office of 135 Eagle Bluff Drive, Claremont, VA 23899 (the "Borrower") agrees to pay to the order of Evergreen Capital LLC, a Tennessee limited liability company, with a principal office of 3829 Coveside Court Louisville, TN 37777 (the "Holder"), the principal sum of $250,000 (the "Principal"), together with interest from any including the date hereof on the unpaid Principal at a rate equal to 12% per annum (the "Interest") until paid in full, pursuant to the terms of this Convertible Promissory Note (this "Note").

### I. TERMS OF NOTE

#### A. Payments, Conversion Rights and Option

<u>Equity Consideration</u>:

As partial consideration for this Note, the Borrower hereby issues 10 shares of common stock of the Borrower to the Holder. The Borrower hereby represents and warrants that it has taken all necessary corporate action, as required by applicable law and pursuant to each of the Borrower's organizational documents, to issue such shares of common stock to the Holder so that the Holder shall, simultaneously with the execution of this Note, become a shareholder of the Borrower and be entitled to all rights and benefits associated therewith.

<u>Payments</u>:

Beginning on January 15, 2019 and until the earlier of (i) the date on which the Principal and all accrued Interest has been paid in full and (ii) the date on which the Holder exercises its Conversion Right (as defined below), Borrower shall make monthly payments to Holder at a rate of $10,000 per month, to be allocated between Principal and Interest in accordance with <u>Exhibit A</u> attached hereto (each a "Payment").

<u>Conversion Right</u>:

At any time prior to the earlier of (i) the date on which the Principal and all accrued Interest has been paid in full and (ii) the date on which the Holder exercises its Conversion Right (as defined below), the Holder shall have the right and option, immediately exercisable in its sole discretion upon written notice to the Borrower, to convert the full amount of this Note into 65 shares of common stock of the Borrower (such right of the Holder, the "Conversion Right"). For each Payment made by the Holder, the number of shares of common stock of the Borrower issuable to the Holder pursuant to the Conversion Right shall be reduced by one share of common stock of the Borrower.



EXHIBIT D - Page 1 of 14

The Borrower hereby represents and warrants to the Holder that as of the date of this Note, the number of authorized shares of common stock of the Borrower is 1100 shares. At all times prior to the earlier of (i) the date on which the Principal and all accrued Interest has been paid in full and (ii) the date on which the Holder exercises its Conversion Right, the Borrower hereby acknowledges and agrees that except as required pursuant to the immediately following paragraph, it will not, without the prior written consent of the Holder, increase the number of authorized shares of stock (of any class) of the Borrower.

### Option:

In addition, the Borrower hereby issues to the Holder an option, exercisable in the Holder's sole discretion, at any time prior to the date of a Change of Control (as defined below) to buy 100 shares of common stock of the Borrower at a strike price of $15,000 per share (the "Option"). In the event the Holder's exercises its Option, such exercise will be cashless and $15,000 shall be deducted from the final share sales price. The Borrower hereby represents and warrants that it has taken all necessary corporate action, as required by applicable law and pursuant to each of the Borrower's organizational documents, to automatically increase the number of authorized shares of common stock of the Borrower from 1100 shares to 1200 shares upon any exercise of the Option by the Holder.

For purposes of this Note, a Change of Control shall mean (i) any transaction, including an equity sale, merger or consolidation of the Borrower with or into any entity, whether in one transaction or a series of related transactions, after which, immediately after giving effect to such transaction(s), (a) the current shareholders and their affiliates, in the aggregate, cease to have the power to elect a majority of the board of directors of the Borrower or (b) the current shareholders and their affiliates, in the aggregate, cease to own (directly or indirectly) at least fifty percent (50%) of the aggregate outstanding capital stock of the Borrowers, or (ii) any sale, transfer or other conveyance, whether direct or indirect, of all or substantially all of the Borrower's assets on a consolidated basis, whether in one transaction or a series of related transactions.

## II. ACCELERATION OF DEBT AND PREPAYMENT

### A. Acceleration of Debt

In the event any Payment is not paid in full when due, the Holder shall have the option, exercisable in its sole discretion, to cause the entire remaining unpaid Principal, together with all accrued and unpaid Interest thereon, reasonable attorneys' fees and all fees, charges, costs and expenses, if any, owed to the Holder pursuant to this Note, to become immediately due and payable by giving written notice to the Borrower. For the avoidance of doubt, in the event the Holder exercises its acceleration rights pursuant to the immediately preceding sentence, the Option shall in no way be effected and the Holder shall retain, in full, its ability to exercise the Option pursuant to the terms of this Note.

### B. Prepayment



The Borrower reserves the right to prepay this Note (in whole or in part) prior to the payment in full of all Principal and all accrued Interest due hereunder without any prepayment penalty. Any such prepayment shall be applied against the installments of Principal due under this Note in the inverse order of their maturity and shall be accompanied by payment of accrued Interest on the amount prepaid to the date of prepayment. Notwithstanding the foregoing, in the event the Borrower exercises its prepayment rights pursuant to the immediately preceding sentence, the Holder shall have the option, exercisable in its sole discretion, to elect to receive the number of shares of common stock of Borrower then issuable to the Holder pursuant to the Conversion right in lieu of any such cash prepayment. In addition, for the avoidance of doubt, in the event the Borrower exercises its prepayment rights pursuant to this Section II, the Option shall in no way be effected and the Holder shall retain, in full, its ability to exercise the Option pursuant to the terms of this Note.

## III. COLLECTION COSTS

If any Payment under this Note is not paid when due or any shares of common stock are not issued when due pursuant to the Holder's exercise of its Conversion Right and/or its Option, the Borrower shall be required to pay all costs of collection or enforcement, including reasonable attorneys' fees, whether or not a lawsuit is commenced as part of the collection or enforcement process.

## IV. DEFAULT

If any of the following events of default occur, this Note and all obligations of the Borrower to the Holder hereunder, shall become due immediately, without demand or notice:

1) the failure of the Borrower to make any Payment in full, when due;

2) the liquidation, dissolution, incompetency or death of the Borrower;

3) the termination or departure of Haulsee and/or Vanatta as principal of the Borrower (each a "Principal"), or a material change in either Principal's role or responsibilities with respect to the Borrower; or

3) the filing of bankruptcy proceedings involving the Borrower or either Principal as a debtor;

4) the application for the appointment of a receiver for the Borrower or either Principal;

5) the making of a general assignment for the benefit of the Borrower's or either Principal's creditors;

6) the insolvency of the Borrower or either Principal;

7) a misrepresentation by the Borrower or either Principal to the Holder for the purpose of obtaining or extending credit; or

8) the occurrence of a Change of Control (at which time, for the avoidance of doubt, the Holder will be entitled to exercise its Option).

## V. REPRESENTATIONS AND WARRANTIES

Each of the Borrower and VanHaulsee Limited, a Virginia corporation, and wholly owned subsidiary of the Borrower (the "Subsidiary") hereby represent and warrant to the Holder that:

1) It is a Virginia corporation duly organized, validly existing and in good standing under the laws of the Commonwealth of Virginia;
2) It has all requisite corporate power and authority to execute and deliver this Note and to perform its obligations hereunder and it's execution, delivery and performance of this Note has been duly authorized by all necessary corporate action so that this Note constitutes the legal, valid and binding obligation of the Borrower and the Subsidiary;
3) The Subsidiary is the sole subsidiary and sole affiliate of the Borrower;
4) The Borrower is the sole owner of the authorized and outstanding shares of the Subsidiary;
5) There are no liens on any all or any portion of the Patent Collateral;
6) All of the information included in Exhibit C hereto is true, correct, complete and accurate in all respects and does not contain any untrue or incorrect statement or omit to state any fact necessary to make the statements contained therein not misleading.

## VI. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VII. MISCELLANEOUS

All Payments shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and demand of this Note.

No delay in enforcing any right of the Holder under this Note, or assignment by the Holder of this Note, or failure to accelerate the debt evidenced hereby by reason of a Payment default or the acceptance of a past-due Payment shall be construed in any way as a waiver of the right of the Holder to thereafter insist upon strict compliance with the terms of this Note without notice being given to the Borrower. All rights of the Holder under this Note are cumulative and may be exercised concurrently or consecutively at the Holder's option. This note may not be amended without the written approval of the Holder.

## VIII. SECURITY

As security for its obligations under this Note, the Borrower and the Subsidiary, each Principal and any other entity hereafter formed by either Principal, or of which either Principal is or becomes a member or shareholder, or holds any other form of equity interest with respect thereto

(collectively the "Grantors"), hereby grants to the Holder a continuing security interest in and general lien upon each of the following, whether now existing or hereafter acquired: each patent and patent application filed by or on behalf of any Grantor with respect to the can manufacturing industry, including, without limitation, each patent application described on Exhibit B, together with any reissues, continuations, or extensions thereof and all goodwill associated therewith and all products and proceeds of the foregoing, including, without limitation, any claim by any Grantor against third parties for past, present or future infringement of any such patent or patent application and any and all claims and causes of action against third parties, arising from or with respect to any of the foregoing, whether accruing before, on and/or after the date hereof, including all rights to and claims for damages, restitution and injunctive and other legal and equitable relief for past, present and future infringement, dilution, misappropriation, violation, misuse, breach or default throughout the world, with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages (collectively, the "Patent Collateral").

Each Grantor, as applicable, agrees to keep the Holder informed of any and all developments or changes with respect to the Patent Collateral, including, without limitation, progression through the USPTO patent application process and the filing of any new application or registration of any patent or patent application included in the Patent Collateral. Each Grantor further agrees and acknowledges that the Holder shall have the ability to review and audit any records of each Grantor with respect to the Patent Collateral and shall be entitled to make inquiries of each Grantor and their agents with respect to the Patent Collateral.

In addition, the Grantors will not do any act, nor omit to do any act, whereby the Patent Collateral may become invalidated, unenforceable, avoided or avoidable without the prior written consent of the Holder and shall notify the Holder immediately if it knows or has reason to know of any reason by any or all of the Patent Collateral may become canceled, invalidated, avoided or avoidable.

In addition, each Grantor acknowledges and agrees that upon execution of this Note and at any time thereafter, the Holder is permitted to (i) file security agreements and any other necessary documentation with the USPTO to protect the Holder's security interests in any and all Patent Collateral and (ii) file Uniform Commercial Code (UCC) financing statements (and any renewals or amendments thereto) in Virginia and Georgia and any other necessary states to reflect the Holder's security interest in the Patent Collateral.

## IX. GOVERNING LAW

This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to conflict or choice of law principles.

[SIGNATURES FOLLOW]



IN WITNESS WHEREOF, this Note has been executed and delivered in the manner prescribed by law as of the date first written above.

**BORROWER:**

Straight Line Drive Incorporated

By: _____
Lee Vanatta, Chief Operating Officer

Share Holder:
Straight Line Drive Incorporated

By: _____
Lee Vanatta

Personally
Guaranteed

Share Holder:
Straight Line Drive Incorporated

By: Don Haulsee _____
Don Haulsee

Personally
Guaranteed
Don Haulsee

**SUBSIDIARY:**

VanHaulsee limited

By: Straight Line Drive, its sole shareholder

By: _____
Name: Lee L. Vanatta
Title: CEO

**HOLDER:**

Evergreen Capital, LLC

By: _____
Brad Smith, Chief Executive Officer

Upon execution of the Note wire funds to:
Bank of America

Rtg# 026009593
Account#334048055016

WIRE ordered
3/14/18

EXHIBIT D - Page 6 of 14

*EXHIBIT*
*A*

**FINANCIAL MODEL:**

|  | | |
|---|---|---|
| YEARS: | 2.4093185 | F/P = | 1.333333496 |
| | | A/F = | 0.029999985 |
| PERIOD: | 1 | A/P = | 0.039999985 |
| RATE%: | 12.0000% | NOTE: | $250,000.00 |

**PAYMENT SCHEDULE:**

| PMT | | BEG BAL | INTEREST | PAYMENT | PRIN RED | END BAL |
|---|---|---|---|---|---|---|
| 1/15/19 | 1 | $250,000.00 | $2,500.00 | $10,000.00 | $7,500.00 | $242,500.00 |
| | 2 | $242,500.00 | $2,425.00 | $10,000.00 | $7,575.00 | $234,925.01 |
| | 3 | $234,925.01 | $2,349.25 | $10,000.00 | $7,650.75 | $227,274.26 |
| | 4 | $227,274.26 | $2,272.74 | $10,000.00 | $7,727.25 | $219,547.01 |
| | 5 | $219,547.01 | $2,195.47 | $10,000.00 | $7,804.53 | $211,742.48 |
| | 6 | $211,742.48 | $2,117.42 | $10,000.00 | $7,882.57 | $203,859.91 |
| | 7 | $203,859.91 | $2,038.60 | $10,000.00 | $7,961.40 | $195,898.51 |
| | 8 | $195,898.51 | $1,958.99 | $10,000.00 | $8,041.01 | $187,857.50 |
| | 9 | $187,857.50 | $1,878.58 | $10,000.00 | $8,121.42 | $179,736.08 |
| | 10 | $179,736.08 | $1,797.36 | $10,000.00 | $8,202.64 | $171,533.44 |
| | 11 | $171,533.44 | $1,715.33 | $10,000.00 | $8,284.66 | $163,248.78 |
| 12/15/19 | 12 | $163,248.78 | $1,632.49 | $10,000.00 | $8,367.51 | $154,881.27 |
| | | | $24,881.23 | $119,999.96 | $95,118.73 | |
| 1/15/20 | 13 | $154,881.27 | $1,548.81 | $10,000.00 | $8,451.18 | $146,430.09 |
| | 14 | $146,430.09 | $1,464.30 | $10,000.00 | $8,535.70 | $137,894.39 |
| | 15 | $137,894.39 | $1,378.94 | $10,000.00 | $8,621.05 | $129,273.34 |
| | 16 | $129,273.34 | $1,292.73 | $10,000.00 | $8,707.28 | $120,566.08 |
| | 17 | $120,566.08 | $1,205.66 | $10,000.00 | $8,794.34 | $111,771.74 |
| | 18 | $111,771.74 | $1,117.72 | $10,000.00 | $8,882.28 | $102,889.47 |
| | 19 | $102,889.47 | $1,028.89 | $10,000.00 | $8,971.10 | $93,918.36 |
| | 20 | $93,918.36 | $939.18 | $10,000.00 | $9,060.81 | $84,857.55 |
| | 21 | $84,857.55 | $848.58 | $10,000.00 | $9,151.42 | $75,706.13 |
| | 22 | $75,706.13 | $757.06 | $10,000.00 | $9,242.94 | $66,463.19 |
| | 23 | $66,463.19 | $664.63 | $10,000.00 | $9,335.36 | $57,127.83 |
| 12/15/20 | 24 | $57,127.83 | $571.28 | $10,000.00 | $9,428.72 | $47,699.11 |
| | 25 | $47,699.11 | $476.99 | $10,000.00 | $9,523.01 | $38,176.11 |
| | 26 | $38,176.11 | $381.76 | $10,000.00 | $9,618.24 | $28,557.87 |
| | 27 | $28,557.87 | $285.58 | $10,000.00 | $9,714.42 | $18,843.45 |
| | 28 | $18,843.45 | $188.43 | $10,000.00 | $9,811.56 | $9,031.89 |
| 5/15/21 | 29 | $9,031.89 | $90.32 | $10,000.00 | $9,909.68 | ($877.78) |

Final Payment $9,122.22

EXHIBIT D - Page 7 of 14

EXHIBIT B

Exhibit A- List of Patents and Pending Patent Applications

S-Drive:     U.S. Patent Application Serial No. 62/342,844 filed May 27, 2016
             U.S. Patent Application Serial No. 15/607,347 filed May 26, 2017

PLUS BROAD
LANGUAGE

 United States Patent and Trademark Office

 Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



### *Electronic Patent Assignment System*

# **Confirmation Receipt**

Your assignment has been received by the USPTO.
The coversheet of the assignment is displayed below:

## PATENT ASSIGNMENT COVER SHEET

Electronic Version v1.1
Stylesheet Version v1.2

| SUBMISSION TYPE: | NEW ASSIGNMENT |
| --- | --- |
| NATURE OF CONVEYANCE: | ASSIGNMENT |

### CONVEYING PARTY DATA

| Name | Execution Date |
| --- | --- |
| DONALD HAULSEE | 01/25/2017 |

### RECEIVING PARTY DATA

| Name: | STRAIGHT LINE DRIVE, INC. |
| --- | --- |
| Street Address: | 135 EAGLE BLUFF DRIVE |
| City: | CLAREMONT |
| State/Country: | VIRGINIA |
| Postal Code: | 23899 |

### PROPERTY NUMBERS Total: 1

| Property Type | Number |
| --- | --- |
| Application Number: | 62342844 |

### CORRESPONDENCE DATA

Fax Number: (770)804-0900
Phone: 678-361-4915
Email: swigmore@srtslaw.com, docketing@srtslaw.com
*Correspondence will be sent to the e-mail address first; if that is unsuccessful, it will be sent using a fax number, if provided; if that is unsuccessful, it will be sent via US Mail.*

EXHIBIT D - Page 9 of 14

| Correspondent Name:<br>Address Line 1:<br>Address Line 2:<br>Address Line 4: | SMITH TEMPEL BLAHA LLC<br>TWO RAVINIA DRIVE<br>SUITE 700<br>ATLANTA, GEORGIA  30346 |
|---|---|
| **ATTORNEY DOCKET NUMBER:** | 05053.0001U1 - SPW |
| **NAME OF SUBMITTER:** | STEVEN P. WIGMORE, REG. NO. 40,447 |
| Signature: | /SPW/ |
| Date: | 02/16/2017 |

Total Attachments: 2
source=CONFIDENTIAL - PROV ASSIGNMENT - FROM HAULSEEE TO STRAIGHT LINE - NOTARIZED - 25JAN2017#page1.tif
source=CONFIDENTIAL - PROV ASSIGNMENT - FROM HAULSEEE TO STRAIGHT LINE - NOTARIZED - 25JAN2017#page2.tif

**RECEIPT INFORMATION**

EPAS ID:        PAT4278606
Receipt Date:   02/16/2017

## Return to home page

| .HOME | INDEX| SEARCH | eBUSINESS | CONTACT US | PRIVACY STATEMENT

EXHIBIT D - Page 10 of 14

*EXHIBIT C 1*

**SLD Inc.**

# Memo

**To:**     Brad Smith

**From:**   Lee Vanatta

**cc:**

**Date:**   03/08/2018

**Re:**     Organization

---

- VanHaulsee LTD is a wholly owned subsidiary of Straight Line Drive
- It was formed to separate the patents. (this is done in case a potential acquirer is only mechanical (ie. Drive patents) not electrical/mechanical redraw system.
- Please note that in the latest contract within the Crown system VanHaulsee is included as a party to the contract. Therefore the revenue from this patent (still in process) will come to Straight Line Drive.
- It has also been contemplated that it would be the vehicle to pursue other SIC codes for the patents. In the current contract with the Crown family of companies the only SIC available for Crown in the 1st right of refusal is canmaking.

Complete Structure is as follows.

- SLD Inc. Don Haulsee CEO, Lee Vanatta COO Corporate Secretary
- VanHaulsee LTD. Lee Vanatta CEO, Corporate Secretary, Don Haulsee COO

*EXHIBIT C2*

**SLD Inc.**

# Memo

**To:**      Brad Smith

**From:**   Lee Vanatta

**cc:**

**Date:**   3/9/2018

**Re:**      SLD Financials

The financials for SLD are still in process for 2017 tax returns.

- I have attached the latest AR and AP
- There are no convertible debentures on SLD's books
- There is approximately $300,000 in long term debt on the books. This is interest free long term loans from principles (Haulsee/Vanatta) for start up costs. Patent legal work, first machine which ran at Ball Container, demonstration machine (which is what sold Crown and will be on display at Cannex China). Other than that there is no debt on books.
- Billing for 2018 included $188,000 for CMB for development, 9 x $5300 for royalties from Wissota Tool and Machine, $60,000 from Ball Container Corp. for 1 unit.

EXHIBIT C3

**SLD, Inc.**

# Memo

**To:**     Lee Vanatta

**From:**   Don Haulsee

**cc:**

**Date:**   7/3/2017

**Re:**     Revised Capitalization Table

| Shareholder | Number of Shares | SS# |
|---|---|---|
| Don Haulsee | 692 | |
| Lee Vanatta | 200 | |
| Megan Gomez | 10 Shares | |
| Brenna Haulsee | 10 Shares | |
| Sarah Morrison | 10 Shares | |
| Christopher Haulsee | 10 Shares | |
| Kevin Haulsee | 10 Shares | |
| Laura Leatherwood | 1 Share | |
| Sean Vanatta | 22Shares | |
| Alison Lamb | 22 shares | |
| Megan Rice | 2 Shares | |
| Amanda Rice | 2 Shares | |
| Abigail Rice | 2 Shares | |
| Jeff Smith | 2 Shares | |
| Randy Norwood | 2 Shares | |
| Mike Vanatta | 1 Share | |
| Steve Wigmore | 2 Shares | |
| Jitan Kuverji | 15 Shares | |
| Total | 1015 Shares | |

EXHIBIT D - Page 13 of 14

EXHIBIT C4

## Corporate Resolution Straight Line Drive Inc.

The officers of Straight Line Drive Inc. (SLD) ( a Virginia Corporation) hereby resolve to award shares of SLD to the following:

| Shareholder | Number of Shares |
|---|---|
| Megan Gomez | 10 |
| Brenna Haulsee | 10 |
| Sara Morrison | 10 |
| Chris Haulsee | 10 |
| Kevin Haulsee | 10 |
| Sean Vanatta | 20 (4 withheld for birth of 2 children) |
| Elliot Vanatta (in trust) | 2 |
| Alison Lamb | 18 |
| Penelope Lamb (in trust) | 2 |
| Justin Lamb Jr. (in trust) | 2 |
| Megan Rice (in trust) | 2 |
| Amanda Rice (in trust) | 2 |
| Abigail Rice (in trust) | 2 |

This action is hereby resolved on this 20th day of January 2017.

Donald R Haulsee President

Lee L Vanatta

EXHIBIT D - Page 14 of 14

# EXHIBIT E

EXHIBIT E - Page 1 of 2

**2019 ANNUAL REPORT**
**COMMONWEALTH OF VIRGINIA**
**STATE CORPORATION COMMISSION**

219010060--11/13/201

**REINSTATE**

| 01 |
|----|

1. **CORPORATION NAME**
   Straight Line Drive Incorporated

   **DUE DATE:**

   **CORPORATE ID.: 0813443-9**

2. **VA REGISTERED AGENT NAME AND OFFICE ADDRESS: DIRECTOR.**

   DON R HAULSEE
   135 EAGLE BLUFF DRIVE
   CLAREMONT VA 23899

   5. **TOTAL NUMBER OF AUTHORIZED SHARES:**
      1,000



3. **CITY OR COUNTY OF VA REGISTERED OFFICE:**
   190 - SURRY COUNTY

4. **STATE OR COUNTRY OF INCORPORATION:**
   VA - VIRGINIA

Changes to items 1 through 5 above cannot be accomplished on this annual report form and will require a separate filing(s). Carefully read the enclosed instruction sheet. Visit our website at scc.virginia.gov/clk/formfee.aspx or contact the Clerk's Office. Type or print in black only.

6. **PRINCIPAL OFFICE ADDRESS:**

| ☐ Mark this box if address shown below is correct | If address is blank or incorrect, add or correct below. |
|---|---|
| ADDRESS:   135 EAGLE BLUFF DRIVE | ADDRESS: |
| CITY/ST/ZIP: CLAREMONT VA 23899 | CITY/ST/ZIP: |

7. **DIRECTORS AND PRINCIPAL OFFICERS:**   All directors and principal officers must be listed.
An individual may be designated as both a director and an officer.

| Mark appropriate box unless area below is blank:<br>☒ Information is correct  ☐ Information is incorrect  ☐ Delete information | If information at lower left is incorrect or blank, please mark appropriate box and enter information below: ☐Correction ☐Addition ☐Replacement |
|---|---|
| OFFICER ☒ DIRECTOR [X]<br>NAME: DON R HAULSEE<br>TITLE: DIRECTOR /President<br>ADDRESS:   135 EAGLE BLUFF DRIVE<br>CITY/ST/ZIP: CLAREMONT VA 23899 | OFFICER ☐ DIRECTOR ☐<br>NAME:<br>TITLE:<br>ADDRESS:<br>CITY/ST/ZIP: |

I AFFIRM THAT THE INFORMATION CONTAINED IN THIS REPORT IS ACCURATE AND COMPLETE AS OF THE DATE BELOW.

_____
SIGNATURE OF DIRECTOR/OFFICER
LISTED IN THIS REPORT

Donald R Haulsee
PRINTED NAME AND TITLE

10/25/2019
DATE

It is a Class 1 misdemeanor for any person to sign a document that is false in any material respect with intent that the document be delivered to the Commission for filing.

CISRXW

219010060--11/13/2018

**EXHIBIT E - Page 2 of 2**
## 2019 ANNUAL REPORT CONTINUED

**CORPORATE NAME:**
Straight Line Drive Incorporated

**DUE DATE:**
**SCC ID NO.:**  0813443-9

### 7. DIRECTORS AND PRINCIPAL OFFICERS (continued):

All directors and principal officers must be listed.
An individual may be designated as both a director and an officer.

| Mark appropriate box unless area below is blank: ☒ Information is correct  ☐ Information is incorrect  ☐ Delete Information | If information at lower left is incorrect or blank, please mark appropriate box and enter information below: ☐ Correction  ☐ Addition  ☐ Replacement |
|---|---|
| OFFICER ☐ DIRECTOR ☒<br><br>NAME:  LEE L VANATTA<br><br>TITLE:  DIRECTOR<br><br>ADDRESS:   121 CATALINA DRIVE<br><br>CITY/ST/ZIP: SAVANNAH GA 31328 | OFFICER ☐ DIRECTOR ☐<br><br>NAME:<br><br>TITLE:<br><br>ADDRESS:<br><br>CITY/ST/ZIP: |
| Mark appropriate box unless area below is blank: ☐ Information is correct  ☐ Information is incorrect  ☐ Delete Information | If information at lower left is incorrect or blank, please mark appropriate box and enter information below: ☐ Correction  ☐ Addition  ☐ Replacement |
| OFFICER ☐ DIRECTOR ☐<br><br>NAME:<br><br>TITLE:<br><br>ADDRESS:<br><br>CITY/ST/ZIP: | OFFICER ☐ DIRECTOR ☐<br><br>NAME:<br><br>TITLE:<br><br>ADDRESS:<br><br>CITY/ST/ZIP: |
| Mark appropriate box unless area below is blank: ☐ Information is correct  ☐ Information is incorrect  ☐ Delete Information | If information at lower left is incorrect or blank, please mark appropriate box and enter information below: ☐ Correction  ☐ Addition  ☐ Replacement |
| OFFICER ☐ DIRECTOR ☐<br><br>NAME:<br><br>TITLE:<br><br>ADDRESS:<br><br>CITY/ST/ZIP: | OFFICER ☐ DIRECTOR ☐<br><br>NAME:<br><br>TITLE:<br><br>ADDRESS:<br><br>CITY/ST/ZIP: |
| Mark appropriate box unless area below is blank: ☐ Information is correct  ☐ Information is incorrect  ☐ Delete Information | If information at lower left is incorrect or blank, please mark appropriate box and enter information below: ☐ Correction  ☐ Addition  ☐ Replacement |
| OFFICER ☐ DIRECTOR ☐<br><br>NAME:<br><br>TITLE:<br><br>ADDRESS:<br><br>CITY/ST/ZIP: | OFFICER ☐ DIRECTOR ☐<br><br>NAME:<br><br>TITLE:<br><br>ADDRESS:<br><br>CITY/ST/ZIP: |

# EXHIBIT F

Commonwealth of Virginia
State Corporation Commission
Office of the Clerk
Entity ID: 08134439
Filing Number: 200723868767
Filing Date/Time: 07/23/2020 12:14 PM
Effective Date/Time: 07/23/2020 12:14 PM

## Stock Corporation - Annual Report

### Entity Information

| | | | |
|---|---|---|---|
| Entity Name: | Straight Line Drive Incorporated | Entity Type: | Stock Corporation |
| Entity ID: | 08134439 | Formation Date: | 01/06/2017 |
| Jurisdiction: | VA | | |
| Total Shares: | 1000 | | |

### Registered Agent Information

| | | | |
|---|---|---|---|
| RA Type: | Individual | RA Qualification: | Director of the Corporation |
| Name: | DON R HAULSEE | Registered Office Address: | 135 EAGLE BLUFF DRIVE, CLAREMONT, VA, 23899 - 0000, USA |
| Locality: | SURRY COUNTY | | |

### Principal Office Address

Address:   PO Box 400, CLAREMONT, VA, 23899 - 0400, USA

### Principal Information

☐ **No Officers:** If the corporation does not have officers because an organizational meeting has not been held.

☐ **No Directors:** If the corporation does not have directors because (i) initial directors were not named in the articles of incorporation and an organizational meeting of the corporation has not been held or (ii) the board of directors has been eliminated by a written agreement signed by all of the shareholders, or by the adoption of provision in the articles of incorporation or bylaws that was approved by all of the shareholders.

| Title | Director | Name | Address |
|---|---|---|---|
| DIR/PRES | Yes | Donald Ray HAULSEE | PO Box 400, CLAREMONT, VA, 23899 - 0400, USA |
| Chief Financial Officer | Yes | Charles Morrison | 4314 Cary Street Road, Richmond, VA, 23221, USA |

### Signature Information

Date Signed: 07/23/2020

| Printed Name | Signature | Title |
|---|---|---|
| Donald Ray Haulsee | Donald Ray Haulsee | CEO |

EXHIBIT F - Page 1 of 1

# EXHIBIT G

Commonwealth of Virginia
State Corporation Commission
Office of the Clerk
Entity ID: 08134439
Filing Number: 200728909704
Filing Date/Time: 07/29/2020 01:36 PM
Effective Date/Time: 07/29/2020 01:36 PM

## Stock Corporation - Annual Report

### Entity Information

| | | | |
|---|---|---|---|
| Entity Name: | Straight Line Drive Incorporated | Entity Type: | Stock Corporation |
| Entity ID: | 08134439 | Formation Date: | 01/06/2017 |
| Jurisdiction: | VA | | |
| Status: | Active | | |
| Total Shares: | 1000 | | |

### Registered Agent Information

| | | | |
|---|---|---|---|
| RA Type: | Individual | RA Qualification: | Director of the Corporation |
| Name: | DON R HAULSEE | Registered Office Address: | 135 EAGLE BLUFF DRIVE, CLAREMONT, VA, 23899 - 0000, USA |
| Locality: | SURRY COUNTY | | |

### Principal Office Address

Address:   PO Box 400, CLAREMONT, VA, 23899 - 0400, USA

### Principal Information

☐ **No Officers:** If the corporation does not have officers because an organizational meeting has not been held.

☐ **No Directors:** If the corporation does not have directors because (i) initial directors were not named in the articles of incorporation and an organizational meeting of the corporation has not been held or (ii) the board of directors has been eliminated by a written agreement signed by all of the shareholders, or by the adoption of provision in the articles of incorporation or bylaws that was approved by all of the shareholders.

| Title | Director | Name | Address |
|---|---|---|---|
| DIR/PRES | Yes | Donald Ray HAULSEE | PO Box 400, CLAREMONT, VA, 23899 - 0400, USA |
| | Yes | Charles Smith | 3829 Coveside Court, Louisville, TN, 37777 - 0062, USA |

### Signature Information

Date Signed: 07/29/2020

| Printed Name | Signature | Title |
|---|---|---|
| Donald Ray Haulsee | Donald Ray Haulsee | CEO |

EXHIBIT G - Page 1 of 1

# EXHIBIT H

**Straight Line Drive**

BALANCE SHEET

As of December 31, 2017

|  | TOTAL |
|---|---|
| **ASSETS** | |
| Current Assets | |
| Bank Accounts | |
| BofA Core Checking - 1096 | 11,125.34 |
| Business Advantage Chk (9018) | 4,707.72 |
| **Total Bank Accounts** | **$15,833.06** |
| Accounts Receivable | |
| Accounts Receivable (A/R) | 5,200.00 |
| **Total Accounts Receivable** | **$5,200.00** |
| Other Current Assets | |
| A/R Miscellaneous | 0.00 |
| Inventory Asset | 49,618.52 |
| **Total Other Current Assets** | **$49,618.52** |
| **Total Current Assets** | **$70,651.58** |
| Fixed Assets | |
| Machinery & Equipment | 34,124.76 |
| **Total Fixed Assets** | **$34,124.76** |
| **TOTAL ASSETS** | **$104,776.34** |
| **LIABILITIES AND EQUITY** | |
| Liabilities | |
| Current Liabilities | |
| Accounts Payable | |
| Accounts Payable (A/P) | 12,062.50 |
| **Total Accounts Payable** | **$12,062.50** |
| Other Current Liabilities | |
| Accrued Salaries | 170,500.00 |
| Note Payable | 100,000.00 |
| Interest Payable | 4,167.00 |
| **Total Note Payable** | **104,167.00** |
| **Total Other Current Liabilities** | **$274,667.00** |
| **Total Current Liabilities** | **$286,729.50** |
| **Total Liabilities** | **$286,729.50** |
| Equity | |
| Opening Balance Equity | 30,738.00 |
| Retained Earnings | |
| Net Income | -218,690.16 |
| **Total Equity** | **$-197,953.16** |
| **TOTAL LIABILITIES AND EQUITY** | **$104,776.34** |

Accrual Basis  Wednesday, May 2, 2018 07:49 AM GMT-7                    1/1

**EXHIBIT H - Page 1 of 1**