## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| STRAIGHT LINE DRIVE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:20cv779–HEH |
| | ) | |
| LEE VANATTA and | ) | |
| JITAN KUVERJI, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>MEMORANDUM OPINION</u>
### (Granting Defendant Kuverji's Motion to Dismiss)

This matter is before the Court on Defendant Jitan Kuverji's ("Kuverji") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion," ECF No. 2). Plaintiff Straight Line Drive ("Plaintiff") filed suit against Kuverji and Defendant Lee Vanatta ("Vanatta"), in Surry County Circuit Court on September 9, 2020. Kuverji filed a Notice of Removal with this Court on October 6, 2020.[1] He was served with a copy of the Complaint on September 18, 2020, and removed the case within thirty days pursuant to 28 U.S.C. § 1446(a). Kuverji filed the instant Motion on October 12, 2020, and thereafter filed his Answer on November 13, 2020. The parties have filed memoranda supporting their respective positions, and the Court heard oral argument on December 3, 2020. For the

---

[1] The basis for removal is diversity jurisdiction. According to the Complaint, Plaintiff resides in Virginia, Kuverji resides in Florida, and Vanatta resides in Georgia. (Compl. 1–2, ECF No. 1-1.) Plaintiff seeks at least $110,000.00 in compensatory damages against both Defendants and $350,000.00 in punitive damages against each Defendant. (*Id.* at 23–24.)

reasons stated herein, Kuverji's Motion to Dismiss for Lack of Personal Jurisdiction will be granted.[2]

## I.    BACKGROUND

Plaintiff is a technology corporation that develops and patents technologies for the can-making industry. (Compl. 3, ECF No. 1-1.) Plaintiff engineers core systems that can be used with bodymakers (machinery that presses metals to create cans at high speeds) from any manufacturer. (*Id.*) Don Haulsee ("Haulsee") is Plaintiff's current CEO and a member of its board of directors. (*Id.*) In late 2016 and into early 2017, Haulsee worked with Vanatta to incorporate Plaintiff. (*Id.* at 3–4.) The Commonwealth of Virginia issued a certificate of incorporation for Plaintiff on January 6, 2017. (*Id.* at 4.) Plaintiff's Articles of Incorporation authorize the corporation to issue 1,000 shares of stock. (*Id.* at 6.) At Plaintiff's inception, Haulsee and Vanatta were both officers and directors. (*Id.* at 4.) Haulsee was Plaintiff's President, CEO, and founder, and Vanatta was Plaintiff's COO and a member of its board of directors. (*Id.*) Haulsee conducted the substantive engineering and patent work while Vanatta managed the corporation's finances. (*Id.* at 4–5.)

Plaintiff alleges that Vanatta made a series of unauthorized, fraudulent transactions on its behalf and that Vanatta embezzled a total of $14,067.75 of Plaintiff's

---

[2] The matter will remain pending as to Vanatta. Plaintiff filed a Suggestion of Death for Vanatta on November 19, 2020, in accordance with Rule 25(a)(1) of the Federal Rules of Civil Procedure, notifying the Court that he passed away on October 21, 2020. (ECF No. 17.) Although this Court will grant Kuverji's Motion, the case will remain active pending any motion for substitution of party for Vanatta under Rule 25(a)(1).

funds. (*Id.* at 6–12.)  As to Kuverji, the Complaint alleges that he is a citizen of Georgia and that he loaned money to Plaintiff through Vanatta, but does not otherwise provide any information about Kuverji, his background, or his relationship with Vanatta. (*Id.* at 2–15.)  Plaintiff principally alleges that he loaned $100,000.00 at 10 percent interest to Vanatta, who was acting on Plaintiff's behalf, in exchange for fifteen of Plaintiff's shares.[3]  (*Id.*)  The fifteen shares given to Kuverji were purportedly in excess of Plaintiff's authorized 1,000 shares. (*Id.* at 6.)  Plaintiff claims that Vanatta executed a promissory note ("the Note") with Kuverji, memorializing the $100,000.00 loan, without Plaintiff's knowledge. (*Id.* at 6–7.)  Plaintiff further alleges that both Defendants knew the $100,000.00 loan needed to be kept secret from Plaintiff's other officers and directors because the additional debt might hinder negotiations with investors interested in the corporation. (*Id.* at 8.)

Kuverji seeks to dismiss all of Plaintiff's claims against him (Counts II, IV, V, and VI) for lack of personal jurisdiction. (ECF No. 2.)  He argues that he is a Florida resident who never spent any time or conducted any business in Virginia. (Def.'s Br. Supp. Mot. 5–6, ECF No. 2-2.)  Vanatta was in Georgia when he approached Kuverji about loaning money to Plaintiff. (*Id.*)  Kuverji avers that he only ever discussed the transaction with Vanatta while Vanatta was in Georgia and Kuverji was in Florida. (*Id.*)  Plaintiff argues

---

[3] The Complaint also references a second, similar transaction between Vanatta and Kuverji for another $20,000.00 loan but Plaintiff admits that it is unsure whether that transaction was made with Plaintiff or with a different entity, Straight Line Drive Holdings, Inc. (Compl. 14.)  This transaction is neither alleged in the enumerated counts, nor included in the compensatory damages calculation. (*Id.* at 15–24.)

that it has established sufficient contacts based upon Kuverji's (1) execution of the Note with a Virginia corporation that contains a choice of law provision applying Virginia laws to the Note, (2) exchange of money with said Virginia corporation, and (3) ownership of fifteen shares of the corporation's stock. (Pl.'s Br. Opp. 6–12, ECF No. 13.) Alternatively, Plaintiff argues that this Court's personal jurisdiction over Vanatta extends to Kuverji because he was Vanatta's co-conspirator. (*Id.* at 11.)

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) made at the preliminary stage of litigation is subject to a *prima facie* standard, similar to motions to dismiss under Rule 12(b)(6). *Sneha Media & Ent., LLC v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018). When a Rule 12(b)(2) motion is raised before the parties have "had a fair opportunity to develop and present the relevant jurisdictional evidence," courts must "give [the plaintiff's] allegations a favorable presumption, taking the allegations in the light most favorable to [the plaintiff]." *Id.* at 196. The issue may be revisited later, if necessary, "when a fuller record is presented because the plaintiff 'bears the burden of demonstrating personal jurisdiction at every stage following [the defendant's jurisdictional] challenge.'" *Id.* at 197 (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).

To establish personal jurisdiction over a nonresident defendant, courts must first determine that jurisdiction is authorized by state law. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). If the state long-arm statute is satisfied, then the court must determine whether jurisdiction is compatible with the Due Process Clause of the United

4

States Constitution. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982). Generally, Virginia's long-arm statute is construed to extend personal jurisdiction to "the outmost perimeters of due process." *Id.* The relevant portion of Virginia's long-arm statue provides that "[a] court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's . . . [t]ransacting any business in [Virginia]." Va. Code Ann. § 8.01-328.1.

A plaintiff satisfies the Due Process Clause by showing that the forum state either has general or specific jurisdiction over the defendant. General jurisdiction is established by "demonstrating the defendant's continuous and systematic contact with the State." *Sneha Media*, 911 F.3d at 198 (internal citations omitted). Specific jurisdiction is established by "demonstrating that the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipate being haled into court there on a claim arising out of those contacts." *Id.*

The United States Court of Appeals for the Fourth Circuit has defined minimum contacts as: (1) the defendant purposefully availed himself of the privilege of conducting activities in the forum state; (2) the plaintiff's claims arose out of the activities that the defendant directed at the forum state; and that (3) the court's exercise of personal jurisdiction over the plaintiff is constitutionally reasonable. *Id.* The Fourth Circuit has further established a nonexclusive list of factors—eight actions that could be conducted in or in relation to the forum state—to be considered in determining whether a defendant purposely availed himself of conducting business in that state: (1) maintaining offices or agents; (2) holding property; (3) soliciting or initiating business; (4) deliberately

engaging in significant or long-term business activities; (5) selecting the forum state in a choice of law clause; (6) contacting a resident of the forum state in person regarding the business relationship; (7) requiring performance of contracted duties in the forum state; and (8) the nature, place, and extent of communications about the business being transacted. *Id.* at 198–99.

### III.   ANALYSIS

In this case, Plaintiff does not purport to demonstrate that Virginia could exercise general jurisdiction over Kuverji.  Rather, Plaintiff contends that it has demonstrated this Court can exercise specific jurisdiction over him under Virginia's long-arm statute and in satisfaction of the Due Process Clause.

Kuverji does not have sufficient minimum contacts with Virginia to allow this Court to exercise personal jurisdiction over him.  He maintains that he has never transacted any business in Virginia aside from the Note in question; never purposely visited Virginia; never maintained offices or agents in Virginia; and never contacted Plaintiff in Virginia.  Importantly, Kuverji asserts that he never entered Virginia to conduct any part of the transaction at issue here.  The Complaint is devoid of any facts alleging that Kuverji transacted business in Virginia.  Plaintiff only alleges that "Kuverji purportedly entered into a promissory note . . . with [Plaintiff] for '15 shares of [Plaintiff's] total shares outstanding 1000 [sic],' in exchange for $100,000.00 with 10% interest." (Compl. 6.)  Plaintiff states that Vanatta had the Note in his sole possession in Georgia and did not disclose the existence of the Note to any of Plaintiff's other officers or shareholders.  (*Id.* at 2, 7.)  Kuverji allegedly wired $100,000.00 in two separate

6

transactions into Vanatta's personal Bank of America account, and Kuverji never contacted Plaintiff in any capacity about execution or repayment of the Note. (*Id.* at 7.) Finally, Plaintiff alleges that Vanatta wired the $110,000.00 due Kuverji under the Note from Plaintiff's account to Kuverji on March 14, 2018. (*Id.* at 9.)

This Court finds the Fourth Circuit's decision in *Sneha Media* instructive. In *Sneha Media* the defendant was an Indian corporation. 911 F.3d at 194–95. The plaintiffs there were two corporate entities with the same CEO; one company was a resident of Virginia and the other was a resident of India. *Id.* The defendant corporation contracted with the Indian plaintiff to distribute broadcasting content in North America and Europe. *Id.* The plaintiffs brought suit in this Court, alleging breach of contract, interference with contract, and federal copyright law violations arising out of their distribution rights to deliver the defendant's broadcasting content in the United States. *Id.* at 194–95. The defendant corporation in *Sneha Media* did not have a contractual relationship with the Virginia corporation, but the defendant's CEO met with the CEO for both the plaintiffs in Virginia, and the Virginia plaintiff corporation assisted some of the defendant's employees with obtaining United States visas. *Id.* at 195–96. However, the Fourth Circuit discounted these contacts between the defendant and a Virginia corporation as "too removed" from the action alleged to put the defendant on notice of a potential lawsuit in Virginia. *Id.* at 199. The court ultimately concluded that the plaintiffs "relied on contacts that [were] constitutionally insufficient to justify specific personal jurisdiction over [the defendant] . . . even if their burden were only to make a *prima facie* showing." *Id.* at 201.

In this case, Kuverji's limited acts executing the Note are too far removed from Plaintiff and its claims of aiding and abetting a breach of fiduciary duty, common law conspiracy, business conspiracy, and unjust enrichment. Like in *Sneha Media*, the core of Plaintiff's claims is unrelated to Kuverji's attenuated interaction with a Virginia business. *See* 911 F.3d at 199. Plaintiff had no personal contact or involvement with Kuverji. Kuverji, therefore, could not have expected to be haled into court in Virginia on a claim arising out of his negotiations, discussions, and transaction with Vanatta while he was in Florida and Vanatta was in Georgia. *See id.* The parties agree that the Note contains a Virginia choice of law provision, but choice of law is separate and distinct from choice of venue. A choice of law clause is only one factor for the court to consider, and Plaintiff admits that a choice of law provision is not dispositive. Without any supporting facts, this Court finds that the choice of law provision in the Note is insufficient to buttress Plaintiff's claim that this Court has personal jurisdiction over Kuverji. Therefore, this Court finds that the Complaint fails to plead sufficient facts either through Virginia's long-arm statute or compatible with the Due Process Clause for this Court to exercise personal jurisdiction over Kuverji.

Plaintiff argues that even if Kuverji's contacts with Virginia are insufficient, this Court may still exercise personal jurisdiction over him as Vanatta's co-conspirator. The Fourth Circuit has recognized a conspiracy theory of jurisdiction, but to successfully plead this theory, "the plaintiff[] would have to make a plausible claim (1) that a conspiracy existed; (2) that [the defendant] participated in the conspiracy; and (3) that a coconspirator's activities in furtherance of the conspiracy had sufficient contacts with

Virginia to subject that conspirator to jurisdiction in Virginia." *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 329 (4th Cir. 2013).  However, a bare allegation of conspiracy is insufficient.  Plaintiff still must plead some connection between Kuverji and Virginia in furtherance of the alleged conspiracy.  *See Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005) ("[S]uch a plaintiff must allege specific facts connecting the defendant with the forum.") (citing *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378– 79 (D.C. Cir. 1988)).  Plaintiff relies on *Verizon Online Services, Inc. v. Ralsky*, 203 F. Supp. 2d 601 (E.D. Va. 2002), to support its argument that conspiracy jurisdiction extends this Court's personal jurisdiction to Kuverji.  The court in *Ralsky* found that the plaintiff sufficiently pled that a conspiracy existed by laying out facts tying each named defendant to acts relating to the conspiracy and aimed at the forum jurisdiction.  203 F. Supp. 2d at 601, 611, 622–23.  Plaintiff here neither sufficiently alleges that a conspiracy existed nor that Kuverji individually took steps in furtherance of the conspiracy in Virginia.  The Complaint offers only conclusory allegations of conspiracy. Plaintiff's only factual allegation is the Note itself.  Simply executing a promissory note through an individual in Georgia hardly constitutes an "overt act" in furtherance of a conspiracy to deprive Plaintiff of money and present and future business.  *See Unspam Techs., Inc.*, 716 F.3d at 329 (citation omitted).

Plaintiff cites several cases supporting its argument that the Note alone is sufficient to establish personal jurisdiction over Kuverji, but all are distinguishable from the facts before this Court.  First, Plaintiff cites *Lee Graham Shopping Center v. Kirsch* to argue that Kuverji's ownership of fifteen shares of Plaintiff's stock sufficiently

9

constitutes conducting business in Virginia. No. 1:13-cv-189, 2013 WL 12097824, at *1 (E.D. Va. 2013). In *Lee Graham*, the defendants had a partnership interest in Lee Graham Shopping Center, LLC. *Id.* The court found that it had personal jurisdiction over the defendants because they "at one time or another claimed an ownership interest in the Plaintiff LLC." *Id.* By contrast, Plaintiff here has not alleged that Kuverji purposefully availed himself of the privilege of conducting business in Virginia by asserting his ownership interests in Plaintiff.

Second, Plaintiff cites various cases supporting its argument that exchanging or loaning money or executing a promissory note in a forum state constitutes conducting business in that state. Plaintiff cites *Richardson v. William Sneider and Associates, LLC*, No. 4:12cv25, 2012 WL 3525625 (E.D. Va. 2012), as an example of this Court finding purposeful availment when a defendant bought a Virginia plaintiff's loan obligation. There, the plaintiff and the underlying transaction leading to the plaintiff's debt were both in Virginia. 2012 WL 3525625, at *1, 3. However, the defendant not only purchased the plaintiff's debt in Virginia, but also subsequently called the plaintiff at work and on her cell phone thirteen times to collect the debt. *Id.* The court held that *the calls* were "properly characterized as a business transaction because the defendant was eliciting performance on a contract." *Id.* at *3.

Plaintiff also relies on *Glumina Bank d.d. v. D.C. Diamond Corp.*, 527 S.E.2d 775 (Va. 2000), for the proposition that contracting to deliver funds to a Virginia corporation's bank account is a purposeful activity even if the funds never reach the account. In *Glumina Bank*, the foreign defendant had an ongoing business relationship

with the Virginia plaintiff in the form of multiple contracts between the two entities, all of which were performed except for the contract at issue in that litigation. 527 S.E.2d at 777–78. Therefore, the court found that it could exercise personal jurisdiction arising from the defendant's "[c]ontracting to supply services or things . . . ," a different portion of Virginia's long-arm statute than at issue in this litigation. *Id.* at 777 (quoting § 8.01-328.1).

Finally, Plaintiff cites *Evolved Karomac Vision Corp. v. Majority Holdings Int'l B.T., LLC*, No. 1:19-cv-269, 2020 WL 856369 (E.D. Va. 2020) for the premise that defendants entering into a promissory note related to a loan with certain terms to be performed in Virginia purposefully avail themselves of the forum state. Yet again, the facts supporting personal jurisdiction before that court went far beyond the promissory note and its terms. In that case, the defendants initiated contact in Virginia to procure the loan, and, under the terms of the loan contract, repayment would occur in Virginia; Virginia law applied; and Virginia courts had jurisdiction in the event of default. 2020 WL 856369, at *3. The court noted that submitting to jurisdiction in the event of default alone had previously formed the basis for personal jurisdiction in the Fourth Circuit. *Id.* at *2.

The defendants in every case cited by Plaintiff all proactively acted or reached into Virginia in association with some business or contract. No such action has been alleged here. Kuverji conducted a transaction associated with a Virginia business only through an intermediary, and he at no point proactively acted or reached into Virginia in

association with the Note.  Finally, he was a passive participant, not the instigator in the transaction.

## IV.    CONCLUSION

Accordingly, as Plaintiff fails to plead any facts showing that Kuverji transacted business in Virginia under Virginia's long-arm statute or sufficient facts constitutionally supporting this Court's exercise of personal jurisdiction over him, Kuverji's Motion to Dismiss for Lack of Personal Jurisdiction will be granted.

An appropriate Order will accompany this Memorandum Opinion.

_____ /s/
Henry E. Hudson
Senior United States District Judge

Date: Dec. 23 2020
Richmond, Virginia

12